IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
UNITED STATES OF AMERICA,      )    CRIM. No. 05-00548 SOM
                               )
          Plaintiff,           )
                               )    ORDER DENYING MOTIONS FOR
     vs.                       )    RECONSIDERATION FILED
                               )    BY DEFENDANT EDWARD LAFAELE
EDWARD LAFAELE (01), and       )    AND BY THE GOVERNMENT
WESSA TANUPO (02),             )
                               )
          Defendants.          )
_____)
```

ORDER DENYING MOTIONS FOR RECONSIDERATION FILED
BY DEFENDANT EDWARD LAFAELE AND BY THE GOVERNMENT

Two motions for reconsideration of this court's Order Suppressing Evidence are before the court, one filed by the Government and the other by Defendant Edward Lafaele. This court denies both motions.

I.    The Government's Reconsideration Motion is Denied.

The Government moves for reconsideration of this court's Order Suppressing Evidence. The Government's motion states:

> The government was not aware that this Court was concerned about the lack of testimonial evidence regarding the issue of inevitable discovery, as the government's attorney was under the mistaken belief that this issue would be decided as a matter of law. The government is asking that it be allowed to reopen evidence in this matter to address evidentiary concerns raised in the Court's ruling, and for the Court thereafter to reconsider its ruling.

The court denies the Government's motion.

First, lack of awareness of the court's concern is not a ground justifying reconsideration. It is the Government's job to advocate its position thoroughly, not just to respond to concerns the court may express. The court is under no obligation to inform any party of how to present its position. Under Local Rule 60.1, reconsideration may be sought based on the discovery of new material facts not previously available, an intervening change in the law, or manifest error of law or fact. The Government's reconsideration motion advances none of these grounds.

Second, even if the Government could rely on its lack of awareness of the court's concerns, the Government's motion would be denied. That is because the court made it clear that the record did not include evidence supporting the Government's "inevitable discovery" argument. At the hearing on September 14, 2006, the court invited Defendant Wessa Tanupo to brief more fully the merits of whether evidence should be suppressed. In continuing the hearing on the suppression motion, the court anticipated that Defendants would be presenting evidence at the continued hearing. The court added:

> THE COURT: And so I was thinking in fairness to the government that it should be able to brief that issue. It may want to put on witnesses, for example, the agent, about what they would have done if they had realized they didn't have the beeper warrant and, you know, would they have gone in any way, you know, within the 48 hours that the anticipatory search warrant was in effect. I

>      don't have anything like that on the record,
> and they might want to do that --
>
>      MR. WILSON [Tanupo's counsel]:  We think
> -- I'm sorry, Your Honor.
>
>      THE COURT:  They might want to do that
> if they -- they might have done that had they
> known that she was moving on her own behalf
> because, if she was moving only on Mr.
> Lafaele's behalf, I think –
>
>      . . . .
>
>      And I mean, you know, for [the
> Government] to introduce the evidence they
> have to show that it was properly obtained
> and so forth.  So I don't see that, you know,
> you're acting as if there's something unfair
> if they're allowed to put on evidence.

Transcript of Proceedings on September 14, 2006, at 15-17.

When the hearing resumed on September 28, 2006, the court referred to the statements quoted above:

>      THE COURT:  We adjourned with Mr. Ross
> knowing -- it was my understanding that Mr.
> Ross wanted to put Mr. Lafaele on the stand
> at the time we left, but he wanted to get
> more information to prepare for it.
>
>      MR. WILSON: Your Honor --
>
>      THE COURT:  Hold on.  Hold on.  I had
> also thought that there might be other
> defense witnesses, and I had thought that
> maybe the government was going to present
> witnesses to the effect that the law
> enforcement agents would have gone into the
> house during the 48-hour effective term of
> the warrant to check on the package even had
> they known that they didn't have the beeper
> warrant so that it would have been an
> inevitable discovery or they would -- and
> then you folks objected.
>
>      MR. WILSON:  Making the assumption that
> they were in fact going to go into the house

within the 48 hours of the warrant, rather than to wait until the beeper went off.

 THE COURT:  No, I'm not.

 MR. WILSON:  Our whole position is that they weren't going to go into the house until the beeper went off.

 THE COURT:  Right.  And you may be right.

 MR. WILSON:  The beeper was not warranted.  They didn't have a valid warrant for a beeper.  Therefore, Your Honor, everything they did after they went into the house, Your Honor, based on that beeper should be suppressed.

 THE COURT:  I understand that's your argument.

 MR. WILSON:  It's crystal clear, Judge.

 THE COURT:  This is a historical recounting that I'm doing.  I'm not stating a position on whether the agents would or would not have gone into the house anyway.

 MR. WILSON:  You just said it, Your Honor, they would have gone into the house in 48 hours.

 THE COURT:  Oh, no, no, that's not what I said.

 MR. WILSON:  May we have Miss Chun --

 THE COURT:  It's not what I said at all, Mr. Wilson.  What I said was I expected that this was going to be an evidentiary hearing.  At the last hearing I'm recalling that we talked about the possibility that Mr. Ross would put Mr. Lafaele on the stand, and we talked about the possibility that there might be other witnesses and one of the things I wondered was whether the government was going to put on other witnesses about the police going in any way.  There was an objection, as I recall.  I'm only recounting the history.

>           I'm not taking a legal position.  How could
>      I?  I haven't heard the evidence on this.
>
>           I recall there was an objection by one
>      of the defense attorneys, saying the
>      government should not be allowed to put on
>      evidence.  And I said, hey, when I started
>      the first hearing last time, the defense said
>      it had no evidence, but I was willing to
>      continue the hearing to let the defense put
>      on evidence.  I felt in fairness that, if the
>      government also wanted to put on evidence,
>      especially because there was going to be more
>      briefing in the interim, that I was going to
>      let the government do that.

Transcript of Proceedings on September 28, 2006, at 35-37.

Even if the Government was entitled to know the court's concerns, the court sufficiently noted for the Government the lack of evidence supporting the Government's "inevitable discovery" argument.  The Government chose to proceed without evidence in the face of the court's statements.  The Government cannot now complain that it was somehow denied the chance to support its position.

II.     Lafaele's Reconsideration Motion is Denied.

Lafaele also seeks reconsideration of the Order Suppressing Evidence.  Lafaele argues that the court should have suppressed more evidence than the court did suppress.  This court suppressed only the evidence derived from the beeper, for which law enforcement agents had no warrant.  The court did not suppress evidence that was neither dependent on the beeper nor obtained through the beeper.

Thus, for example, the court did not suppress evidence that Lafaele signed for the package. The package was delivered by a law enforcement agent posing as a delivery person. By the time of the delivery, agents had already opened the package and found drugs inside, pursuant to a search warrant obtained independent of any beeper application. The law enforcement agent who delivered the package was not relying on the beeper to see that Lafaele signed for it. The agent was instead relying on what he himself saw. The absence of the beeper warrant made the placement of the beeper in the package and the monitoring of the beeper unlawful. The absence of the beeper warrant did not make delivery of a package unlawful. For that reason, this court does not suppress the evidence obtained from mere delivery of the package. Such evidence did not depend on the placement of the beeper in the package or on the monitoring of the beeper.

Lafaele's reconsideration motion argues that evidence obtained from the subsequent search warrant permitting a search of Tanupo's residence necessarily relied on evidence obtained from the use of a beeper for which there was no warrant. Therefore, Lafaele argues, evidence obtained from that subsequent warrant must also be suppressed. This court is unpersuaded.

The application for the subsequent warrant relied on the following information obtained through the beeper:

> 21. . . . . Agents monitored the beeper for approximately five minutes when it alerted, indicating that the subject parcel had been opened.

6

>           22.  Agents approached the door to the
>      residence and knocked and announced their
>      presence several times.  There was no
>      response from within the residence and agents
>      entered the premises pursuant to the
>      Anticipatory Search Warrant.
>
>           23.  Agents located two individuals from
>      within the residence:  the male who had
>      signed for and accepted the subject parcel
>      who was identified as Edward Lafaele
>      ("Lafaele") and a female, identified as Wessa
>      Tanupo ("Tanupo").  Both Lafaele and Tanupo's
>      hands were examined for the presence of the
>      fluorescent powder.  Agents detected the
>      presence of the fluorescent powder on
>      Lafaele's hands, hips of his pants and part
>      of his face.  The subject parcel was found in
>      the kitchen of the residence.

Application and Affidavit for Search Warrant, filed in Mag. No. 05-00961 KSC (Dec. 6, 2005).  All of the above evidence is suppressed.

The subsequent warrant, however, was based on additional grounds.  The warrant application recited the searching of the package before it was delivered and also recited the circumstances of the delivery to 94-048 Poailani Circle, Waipahu, Hawaii.  The warrant application recited the arrest of Fatima Liaina at a different location, the recovery at her home of drugs, the similarity of the packaging used in her drug packages to the packaging of the parcel delivered to 94-048 Poailani Circle, and Liaina's numerous monitored telephone calls to a phone at 94-048 Poailani Circle, Waipahu, Hawaii.  None of this evidence depended on or derived from the beeper.  This evidence was sufficient to establish probable cause to believe

that a drug crime was being committed at 94-048 Poailani Circle. The warrant that issued subsequent to the arrests of Lafaele and Tanupo was therefore lawful, and evidence obtained through execution of that warrant is not suppressed.  Lafaele's reconsideration motion is denied.

III.     CONCLUSION.

This court denies the separate reconsideration motions filed by the Government and Lafaele.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 10, 2006.

_____
Susan Oki Mollway
United States District Judge

**United States of America v. Lafaele, et al.**, **Crim. No. 05-00548 SOM; ORDER DENYING MOTIONS FOR RECONSIDERATION FILED BY DEFENDANT EDWARD LAFAELE AND BY THE GOVERNMENT.**